Number 171952 United States v. Denzel Chisholm May it please the Court, my name is Jin Ho King and I represent the defendant Denzel Chisholm. May we reserve two minutes for rebuttal? Yes. Thank you. We ask the Court to reverse the judgment of conviction because the trial court abused its discretion in denying the motion for mistrial. We would also ask the Court to remand for resentencing because the sentence was substantively unreasonable. On the issue of mistrial, I'll talk about the It's really hard to understate how dramatic this sequence was. The government's very first witness, who was anticipated to testify about these large quantities of heroin trafficking, he goes on the stand and says that he doesn't remember anything. That is dramatic enough, and that's recounted in news articles, frankly, about that day. The next day, it comes to light, not from the jury, but certainly before the judge, that he had received some kind of a threat. And the judge permits the government to recall him to testify, but not only that, to allow him to and to essentially say that he had been threatened. We acknowledge that the judge did instruct the jury to use that for a limited purpose, but I think that this is... Well, the witness also testified that the threat didn't come from the defendant. That's right. I don't think that makes a difference for the kind of prejudice that this provides. But if a witness is recanting his testimony, it seems immediately everyone wants to know why. What's your explanation for why you're recanting? And you're essentially saying that if the reason for the prior recanted testimony was a threat, that we should have an absolute rule that a district court can't allow that testimony in. I think that's what you're saying. I think that's close to what I'm saying, but I think particularly in the circumstances of this case, this is a situation where, again, it's hard to undersell how dramatic... But that's a problem for you too, because there is one person who certainly knows way better than we do exactly what the impact was in the courtroom, what the atmosphere was like, what the tone was like, and that's the trial judge. And that's why we have this abuse of discretion standard. So when you talk about that it was drama, prosecution may get up and say, oh, it wasn't that dramatic to me. I fell asleep or whatever. And it's the district court judge who's weighing the impact of all that and who also gives an instruction to the jury that seemed pretty favorable to the defendant on that. Yes. And I acknowledge, again, that the instruction was made and that it was given not too long after. Well, it was the instruction. It was a limitation on mentioning the child, and it was an acknowledgement that the threat didn't come from the defendant. So it was sort of more than a one-pronged attack. That's right. And to be clear, I think the... So what is it about this case that would distinguish it from this chaotic question as to why it wouldn't apply across the board if it applies here? Sure. So I think that the reason why this particular case is, again, the kind of reaction that was brought forward, at least paired on the record. This, obviously, the district court judge is in a good position because she's there. But even based on the record here, I think that this panel can see that this was a dramatic sequence that no instruction could cure. And that won't always be the case. There will always be, for example, a news article about the reaction of the jury to the sequence of facts. Give me an example of a case where a witness testifies X, he then comes back the next day and recants and says not X, and he's asked what the reason is, and he says, I got a threat. Give me a case where you say we would say that's okay. I don't have a case that says that. So I think you're saying you want us to promulgate, as a matter of law, a rule that the jury can never be told the reason why the witness gave false testimony if the reason is a threat, even if not from the defendant. Well, I'll say one more point that I think distinguishes this case, and that's that this is a case about a conspiracy and about a drug trafficking organization. Particularly because this is about a conspiracy, it's not just about whether the defendant threatened the witness. This raises the specter of whether this drug trafficking organization, whether it exists or not, is putting this forward, threatening the witness to protect one of its members. So you're saying it's worse that he said it wasn't the defendant who threatened me. If he'd said the defendant threatened me, then it wouldn't have been so bad? I'm not saying that it is worse, but it is certainly very bad. And it's certainly bad enough, I think, that it requires mistrial. How do you grapple with Buttersworth? I'm sorry? How do you grapple with Buttersworth? Which was a conspiracy. Right. That was a conspiracy. And I think that, fundamentally, this case is just more extreme. I think that's really what it comes down to. We have a situation where we have a defendant who is accused of being the head of the biggest heroin trafficking organization on the Cape. And you have a witness, the first witness, the star witness, who comes in to testify, who then suddenly remembers nothing, and then comes back the next day and says he was threatened, but it was by a third party. Net-net, it's a much better scenario for the defendant than if the witness... I mean, here the government puts on its star witness, and I'm sure it was dramatic, he just... It says he knows nothing. You can imagine the government lawyer standing there. And then the recant, and then the explanation. Net-net, that's all a lot better scenario for the defendant than if the guy had just taken the stand and testified in the first place to what everyone thought he was going to testify to. So the whole assessment of what was going on here in terms of effect on justice and fairness and stuff, the defendant actually made out good enough that the prosecution ended up closing by saying, this guy has no credibility, but he's corroborated. I think that that's... The credibility of that witness and many of the other witnesses is a nuanced determination, but it's not like any of these witnesses came in as unblemished, I'll say, just because they are cooperating witnesses, they are obtaining a benefit. So there is a question as to their credibility, but obviously that's a question for the jury to decide. I think that the change in testimony, because it raises that specter of the existence of the organization, the existence of a relationship between the organization and the threats to that witness, that this becomes something more than simply just something that wasn't that prejudicial. I mean, this... Well, there were recordings, right? So the government proved the existence of the organization through testimony and evidence other than this one particular witness. I think that, obviously we look at the evidence in the light most favorable to the government, that's true. I think that when we're looking at this issue, at that moment in time when this arises, I think it's different. This is a question of what organization there is, what conspiracy there is. There could be multiple conspiracies. But wasn't that witness saying there was a conspiracy? The witness was saying that there was a conspiracy. See, why would the jury disbelieve that but believe him when he says he was threatened, or she says she was threatened? So, to make sure that I understand the question, is it that why would the jury disbelieve the fact when he said that there was a conspiracy, but then disbelieve... Yeah, I think you're saying that once he says he was threatened, the jury could infer from that that there must be someone else out there, so there really is a conspiracy, because who would have threatened him if it wasn't the defendant, unless there was multiple people involved? But if the testimony itself was, hey, there is a conspiracy, then what that inferential route is irrelevant unless your premise is that people would be more likely to believe that than they would be to believe the direct testimony there was a conspiracy. I think that, to answer that briefly, you don't have to believe that witness because the witness comes in, assuming that he just came in and testified as everyone expected him to. The jury was not bound to believe what he said because there were other things that questioned his credibility, including the fact that he was promised something, and that he was a cooperating witness. I know that my time is running a little lower. I'm happy to continue discussing this issue with the panel. I do want to touch upon the sentencing question, if that's all right. Now, the sentencing issue is there's not much support in the case law. I'll be candid about that. But I think that there is support from the legislative history for the Anti-Drug Act. Fundamentally, it comes down to how should the sentencing guidelines match up with the mandatory minimums that were established under that statute. Mr. Chisholm's position is that they simply do not match up, and the district court's failure to give a sentence that is in line with that legislative intent rendered a substantively unreasonable sentence. Why don't you talk about the antagonistic co-defendant? Certainly. So the, I think the points, the deepest point of contention on that issue is whether there was, whether this was simply antagonistic or whether this was irreconcilable. And I think that this comes down to what evidence did the co-defendant bring in that really painted Mr. Chisholm as more than just a drug dealer? Because he admitted essentially that he was a drug dealer. The question is, was he this leader of a sophisticated drug trafficking organization? And Ms. London, through her counsel and cross-examining witnesses, did try to paint him in a picture that the government otherwise didn't necessarily paint And this is particularly, I think, in the testimony of Special Agent Koufalas about whether Mr. Chisholm needed to prearrange to visit any of the other alleged stash houses. Did the defendant know before trial started that her defense was shifted from innocence to essentially weak-willed? So I think the short answer is no. I mean, the record does show that there's conversation about what her defense was going to be. And we've cited that in our brief. It seems clear from those conversations that her defense was, I didn't know anything. And so therefore, I should be not guilty if I may. Yes, please. So the problem is here where then she comes out and says, I didn't necessarily know anything, but here's all the evidence where he is sophisticated because I need to defeat a claim of willful ignorance or willful blindness. And so I'm going to build him up as bigger and sophisticated to show that I didn't know and I didn't need to know. And so we would ask for the relief requested. How would we administer this rule? We have two defendants who are properly triable together in the beginning. One of them then develops during the middle of the trial a different approach that is arguably materially antagonistic to the other. If we then had a rule at that point, the district court judge was required, again, we're back to requiring because it's abuse of discretion standard, was required to declare a mistrial. Do you see the opportunities for games playing that that would result in essentially all joint defendant trials? You take a look, you see how the trial is going. If it doesn't look how it's going, well, my defense changes their theory and mistrial. I think that this, if I may respond, I think that this is a case that this court can look at the totality of the circumstances where it's not just the change in the defense. It's not just the fact that you have a dramatic recanting of testimony. You have both. And when you have both, I think it's fair to order a mistrial. As to Mr. Chisholm, the district court judge did talk about what would happen if she did and would the case continue to proceed against the co-defendant. All right. So you're saying we don't look at each individually. That's not what you're asking us to do. You're saying that in the context of this case, we should take a cumulative approach. I'm asking the court to both look at these things individually, but also to look at it cumulatively. I understand how it can be challenging to distinguish this case from many other cases if we're looking at just one thing in isolation. But we don't have to look at just one thing in isolation. We can look at the totality of the circumstances. Thank you. Thank you. Good morning, Your Honors. Alexia DiMincentis for the government. I'd like to begin by addressing the very last point that counsel raised regarding the cumulative nature of these errors. That is a claim that the defendant expressly made below spiting Sepulveda for that proposition. And it is an argument that is considerably absent from his briefing on appeal and therefore should be considered waived. However, the government believes, even aside from any waiver issue, that the hold here is no greater than the sum of the parts. And taking those parts in turn, beginning with the testimony by Sarajevo, I think it's important to set the baseline here. The testimony concerning a threat is not in and of itself sufficient to require a mistrial, and nor could it be without creating perverse incentives for witness tampering, which is a concern that I think, as the record reflects, was particularly acute in the context of this case. The district court, mindful of those concerns, but also mindful of the overall context within which any recall testimony would be offered, carefully assessed the situation. It conducted an ex parte hearing with Sarajevo, which allowed it to determine both what his testimony would likely look like, and also to assess whether or not there were ways to limit it so as to I submit that the district court's conclusion that the preferred course was to continue the trial and allow Sarajevo to take the stand was not a manifest abuse of discretion. Can I ask you a side point? Your brief makes mention of the fact that when Sarajevo was off the witness stand at first and leaving the courtroom, that he nods to the defendant. Is there anything on the record to that effect? The only thing on the record to that effect is the district court's statement that it had observed that. I would note that I think that that sort of after the fact interaction between the witness and the defendant is something that a district court would be especially attuned to, given that it would have to determine whether any false testimony was procured. And moreover, the defendant in no way suggested that that fact in and of itself created a higher risk for prejudice here, and so there simply is nothing more on the record on that particular point. Now, as it concerns the, excuse me, the testimony that Sarajevo did offer concerning the existence of a threat, I think the defendant attempts to draw this suggestion of an inescapable inference that that threat necessarily came from Chisholm, but that's far from obvious. The threat could have come from anywhere, and as Your Honor noted, Sarajevo in fact testified specifically that it did not come from Chisholm. Moreover, the district court took steps as That doesn't make any sense to me, because who else would it have come from? Or if it didn't come from him directly, who else would have an incentive to threaten him regarding this particular testimony? Well, we simply don't know, Your Honor. I think that could have come from a family member. It could have come from a supplier, as this Court noted in Butterworth. And on that point, I think Butterworth is very instructive. Butterworth, like this case, involved conspiracy, and no, it didn't involve the same level of drama with the initial testimony and recall testimony, but I do think it's instructive as to the inferences that this Court is willing to draw from the mere fact of a threat. And in Butterworth, just as here, there was testimony that the threat did not come from the defendant. And in Butterworth, just as here, the district court was careful to point out the fact that there was no evidence whatsoever that the threat came from the defendant. With those safeguards, in terms of ensuring that there was no undue prejudicial inference to be drawn here, the district court did what I just said in terms of making sure that there was evidence that the threat didn't come from Sariello, but it also made sure that the perhaps most prejudicial part of this testimony, which would have been the mention of Sariello's young daughter, did not come forward. And under these circumstances, the defendant simply cannot demonstrate the severe prejudice that is required to prove a manifest abuse of discretion. To touch briefly on the topic of the allegedly antagonistic defenses here, I would like to begin by noting that the defendant did not raise a contemporaneous objection in response to the cross-examinations of Davis, Hayes, or Kefalos. Even setting aside, however, any question of forfeiture, the defendant's claim fails for lack of prejudice. The references in Stephanie Davis' testimony to the triad, the district court I think properly found that it's not entirely clear what a triad refers to or that there would be a prejudicial inference drawn from that. And moreover, to the extent that the defendant is suggesting that the nature of the question suggested the existence of the conspiracy that the defendant was denying existed, that testimony was merely affirming of testimony that had already been elicited in detail on direct examination. Similarly, the distinction that counsel sought to draw between Chisholm's access to Horndon's home and other stash houses was merely repeating evidence that had already been extensively entered into the record regarding Chisholm's use of stash houses. This and Luciano Pacheco, Pena Borja, Tejeda, has continuously found that where the allegedly antagonistic defense is effectively just reaffirming evidence that the government has already entered and is in no way adding to or detracting from the government's evidence, that a mistrial is not required. Just to touch briefly before I conclude on the question of the appropriate standard of review when a defendant does not object following the imposition of a sentence to its length. And in that case, the government has chosen not to defend the Fifth Circuit's conclusion that plain error would apply. However, for the reasons that put forth in the government's brief, the defendant's claim fails regardless of the standard employed. Simply put, the sentencing guidelines have embodied aggregation since they were enacted in 1987. And if Congress, which effectively approves of those guidelines, in any way thought that its intention was being misrepresented by the use of aggregation, it certainly could have done something about it by now. I'm sorry. You're saying the Supreme Court took a case where they're going to decide whether plain error or abuse of discretion applies? That's correct. And what happened in that case? Did the Circuit Court affirm which standard? The Fifth Circuit in that case employed a plain error standard where the defendant failed to object. The case is Holguin-Hernandez. Do you have the cite? Unfortunately, I don't have the precise citation, but I'm happy to submit a 28-J to that effect. Okay. Thank you. Unless there are any other questions, the government requests on this brief. Thank you. I'll just make a quick point concerning the prejudice prong of the ever-faconable defenses. While it is true that there was testimony about Mr. Chisholm's use of stash houses, the testimony that a co-defendant drew out on cross-examination was to really put a pin on how sophisticated that use was as compared to his use of the co-defendant's home herself. That obviously has bearing on her own defense, but that is inconsistent with Mr. Chisholm's defense, which was that he was not that sophisticated, that he wasn't this leader, and that he couldn't just demand and then try to hide this from Ms. London. Do you disagree with the government's position that the other evidence would have supported their take on his involvement? The evidence does support the government's position. That is true. But the... So what does putting a pin on it, why is that relevant? I think that's relevant because... Why is that prejudicial? Certainly it's prejudicial. The question is, I think, where here we have a situation where the defendant, the co-defendant, had she not been tried together and had she simply stuck with the original offense that she didn't know anything, that this evidence would not have come in. They could have been tried together, but by affirmatively trying to prove her willful, lack of willful blindness, she made it such that Mr. Chisholm's guilt was that much clearer. Thank you.